UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

ANTHONY LAROSA,                                        Case No. 8:10-bk-10012-CPM

      Debtor.

_____/

LARRY HYMAN, as Chapter 7 Trustee,                    Adversary Proceeding No. 24-ap-


         Plaintiff,

vs.

ANTHONY LAROSA,
ANDRUS WAGSTAFF, PC as
Round Up Litigation Counsel for Anthony LaRosa,
LAWRENCE GROUP LP  as
Round Up Litigation Co-Counsel for Anthony LaRosa,
and SETTLEMENT COORDINATION SERVICES, LLC
as coordinator of Round Up settlement.

         Defendants.

_____/

## CHAPTER 7 TRUSTEE'S COMPLAINT FOR DECLARATORY ACTION, INJUNCTIVE RELIEF AND FOR TURNOVER

LARRY HYMAN, Chapter 7 Trustee (the "**Trustee**" or "**Plaintiff**"), by and through his

undersigned counsel, hereby sues ANTHONY LAROSA ("**Debtor**"), ANDRUS WAGSTAFF,

PC, as Round Up Litigation Counsel to Anthony LaRosa, LAWRENCE GROUP LLP as Round

Up Litigation Co-Counsel for Anthony LaRosa, and SETTLEMENT COORDINATION

SERVICES, LLC, as coordinator of the Round Up settlement ("Andrus Wagstaff, Lawrence Group

LP, the Debtor, and Settlement Coordination Services, LLC, collectively referred to as the

"Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b).

2.      This action is commenced pursuant to Fed. R. Bankr. P. 7001(1) and (9) and 7065 and is a core proceeding under 28 U.S.C. §§ 157(b)(2), including subparts (A), (E), (H), and (O) thereof.

3.      Venue of this Adversary Proceeding in the Middle District of Florida is proper pursuant to 28 U.S.C. § 1409(a).

4.      The statutory predicate for the relief requested herein is Sections 105 and 542 of the Bankruptcy Code.

## THE PARTIES

5.      On April 28, 2010, the Debtor filed his Chapter 7 Petition, Case No. 8:10-bk-10012-CPM, ("Petition Date").  The Trustee was duly appointed.

6.      On July 3, 2017, the Debtor retained ANDRUS WAGSTAFF, PC, a law firm located at 7171 West Alaska Drive, Lakewood, Colorado 80226 and the law firm of LAWRENCE GROUP, LLP located at 1250 Connecticut Avenue, N.W., Suite 200, Washington, D.C. 20036 to prosecute a personal injury claim for damages due to Debtor's exposure to Monsanto's Round Up weed killer. See Contingency Fee Agreement attached as Exhibit A.

7.      SETTLEMENT COORDINATION SERVICES, LLC, located at 515 S. Fry Road, Suite 244 Katy, Texas 77450, was retained by ANDRUS WAGSTAFF, PC to consult with the Bankruptcy Trustee and act as a liaison with Andrus Wagstaff, PC to resolve any issues arising from the settlement of Debtor's Round Up claim and Anthony LaRosa's Bankruptcy Case No. 8:10-bk-10012.

## **BACKGROUND**

8.      The Debtor filed his Chapter 7 Petition on April 28, 2010.

9.      Pre-Petition, Debtor was exposed to Monsanto's weed killer known as Round Up.

10.     Pre-Petition (on or about April 1, 2010) Debtor was diagnosed as having negative health consequences as a result of exposure to Monsanto's weed killer known as Round Up.

11.     The Debtor filed his Schedules and Statement of Financial Affairs (Doc. 1 in main case) but failed to list his Round Up exposure, adverse health diagnosis, and potential claim against Monsanto.

12.     The Trustee filed his Final Report on September 20, 2012 (Doc. 39 in main case) and the case was closed on September 21, 2012.

13.     The Debtor received his discharge on September 21, 2012. (Doc. 40 in main case).

14.     Subsequent to the closing of the case, SETTLEMENT COORDINATION SERVICES, LLC contacted the U.S. Trustee's Office by letter dated March 20, 2020, disclosing the date of Anthony LaRosa's medical diagnosis as April 1, 2010 and disclosing the possible settlement of the Debtor's claim against Monsanto. See letter attached as Exhibit B.

15.     Accordingly, the Trustee reopened the case and noticed it as an asset case.  By email dated March 7, 2020 the Trustee informed SETTLEMENT COORDINATION SERVICES, LLC as follows:

> Please be advised that this case has been reopened and I have been reappointed Chapter 7 Trustee in this matter.  I wish to pursue the Monsanto/Round Up claim.  Please advise as to the law firms to be employed.

See email dated March 7, 2020 attached as Exhibit C.

16.     Over a period of the next seven (7) months, Jack Garland and Emmie L. Schulte of SETTLEMENT COORDINATION SERVICES, LLC corresponded with Mr. Hyman.

17.    On October 22, 2020, Jack Garland identified the attorneys to be hired by the Bankruptcy Estate to pursue the Debtor's claim against Monsanto as Sarah Wolter of Andrus Wagstaff, PC and Gary Podell of Lawrence Litigation Group LLP.

18.    Larry Hyman, as Trustee, replied on October 22, 2020 and stated:

> Any attorney/law firm seeking compensation, in this matter, must prepare, sign, notarize an affidavit in a form similar to the attached.   In addition, the attached application to employ counsel must also be filed.  Please customize the application.

> Upon your completion of both pleadings please forward to me the fully executed affidavits in PDF format and the application to employ in WORD format.

> Please contact me should you have any questions.

19.    On April 1, 2021, Jack Garland sent draft declarations and draft applications to employ both Sarah Wolter and Gary Podell.

20.    It was apparent to all parties that Larry Hyman, as Trustee, was asserting the Bankruptcy Estate's claim to the Debtor's Monsanto Round Up settlement and notifying all involved parties that attorneys Sarah Wolter and Gary Podell needed to be retained by the Bankruptcy Estate in order to obtain a recovery and be compensated for same on behalf of the Debtor.

21.    However, on April 4, 2024, Larry Hyman was notified that Andrus Wagstaff, PC had not only recovered a settlement on behalf of the Debtor without being retained by the Bankruptcy Estate, but had on both January 1, 2022, and July 1, 2022 dispersed the net settlement proceeds to Anthony LaRosa, Andrus Wagstaff, PC, and Lawrence Litigation Group LP without Bankruptcy Court approval. See email dated April 11, 2024 and disbursement statements attached as Composite Exhibit D.

22.     On August 6, 2024, the Trustee sent a demand letter to Settlement Coordination Services, LLC and to Andrus Wagstaff,  PC seeking the turnover of $61,148.69. See letter attached as Exhibit E.

23.     The Trustee has not received any funds and he has not received a written response to his demand letter from Andrus  Wagstaff,  PC.

24.     Emmie  Schulte  of  Settlement  Coordination  Services,  LLC  responded  to  the Trustees  demand letter by stating:

> My role was limited to notifying appropriate bankruptcy persons and Andrus Wagstaff, PC of the potential settlement at that time. Upon receipt of the trustee's decision, I notified Andrus Wagstaff, PC. That was the extent of my contracted services.

## COUNT I
## DECLARATORY ACTION THAT THE ROUND UP
## SETTLEMENT PROCEEDS ARE PROPERTY OF THE BANKRUPTCY
## ESTATE UNDER 11 U.S.C. § 541

25.     Paragraphs 1 through 24 are re-alleged and incorporated herein by reference.

26.     This is an action to declare that some or all of the $61,148.69 net proceeds from Debtor's Monsanto Round Up settlement constitutes property of the Estate under 11 U.S.C. § 541.

27.     The proceeds from the Monsanto Round Up settlement are property of the Estate under 11 U.S.C. § 541(a)(1) which includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

28.     As a result, only the Bankruptcy Trustee has standing to pursue Pre-Petition causes of action. *Tyler v. DH Cap. Mgmt., Inc.,* 736 F.3d 455, 461 (6th Cir. 2013) citing *Stevenson v. J.C. Bradford & Co. (In re Cannon),* 277 F.3d 838, 853 (6th Cir.2002).

29.     Determining the time at which a cause of action becomes bankruptcy property is not straightforward. However, "Property" is construed "generously" under the Bankruptcy Code. *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). "Every conceivable

interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Azbill v. Kendrick (In re Azbill),* 385 B.R. 799 (table), 2008 WL 647407, at \*7 (6th Cir. BAP 2008) (quoting *In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993)). Consequently, most courts analyze whether the asset is "sufficiently rooted in the pre-bankruptcy past" of the debtor. *Tyler v. DH Cap. Mgmt., Inc.,* 736 F.3d 455, 461 (6th Cir. 2013) citing *Mueller v. Hall (In re Parker),* 368 B.R. 86 (table), 2007 WL 1376081, at \*7 (6th Cir. BAP 2007) (quoting *Segal,* 382 U.S. at 380, 86 S.Ct. 511); *In re Edmonds,* 263 B.R. 828, 830 (E.D.Mich.2001); *In re Richards,* 249 B.R. 859, 861 (Bankr.E.D.Mich.2000).

30.     The *Tyler* court set forth certain principles in applying the test of "sufficiently rooted in the pre-bankruptcy past."

31.     First, "pre- petition conduct or facts alone will not 'root' a claim in the past; there must be a pre-petition violation." *Id.* at 736 F.3d 462.

32.     Second, "all causes of action that hypothetically could have been brought pre-petition are property of the estate. . . even if the debtor was unaware of the claim." *Id.*

33.     Third, "the entire cause of action is property of the estate, even if further post-petition damages were incurred. *Id.*

34.     Where the conduct underlying a claim and the resulting injury both occur pre-petition, the debtor has a pre-petition property interest in the resulting claim even if he or she has not yet discovered all the facts supporting the claim. *In re Alipour*, 252 B.R. 230, 234 (Bankr. M.D. Fla. 2000).

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter a judgment declaring that $61,148.69 of the proceeds from the Debtor's Monsanto Round Up settlement constitute property of the Estate under 11 U.S.C. § 541, along with such other and further relief as the Court deems appropriate.

## COUNT II - TURNOVER OF PROPERTY OF THE
## BANKRUPTCY ESTATE UNDER 11 U.S.C. § 542

35.     Paragraphs 1 through 24 are re-alleged and incorporated herein by reference.

36.     This is an action to compel the Defendants to turnover property of the Bankruptcy

Estate under 11 U.S.C. § 542.

37.     The Defendants are in possession of the proceeds of the Debtor's Monsanto Round

Up settlement which constitutes property of the Estate under Section 541 of the Bankruptcy Code.

38.     Thus, the Trustee is entitled to any and all proceeds Debtor's Monsanto Round Up

settlement.

39.     Section 542(a) of the Bankruptcy Code compels the Defendants to turn over to the

Trustee all property of the Bankruptcy Estate.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter a judgment

compelling the Defendants to turn over $61,148.69 of the net proceeds from the Debtor's

Monsanto Round Up settlement.

<div style="margin-left:40%">

/s/ Angelina E. Lim
Angelina E. Lim: FBN: 0158313
Robert V. Potter: FBN 0363006
Johnson, Pope, Bokor, Ruppel & Burns, LLP
400 N. Ashley Drive, Suite 3100
Tampa, FL  33602
Email:  angelinl@jpfirm.com
        bobp@jpfirm.com
Telephone:  (813) 225-2500
Facsimile:  (813) 225-1857
Counsel for Larry Hyman, Chapter 7 Trustee

</div>

# **EXHIBIT A**

# CONTINGENT FEE AGREEMENT

Dated _____7/3/2017_____

The Client:



(Name)    Anthony LaRosa

(Address)   13205 ███████████ Florida 34667-2718

(Tele. #)   ████████

(SSN)    ████████

retains the Firms:

Andrus Wagstaff, P.C.           Lawrence Litigation Group, LLP

7171 W. Alaska Drive           1250 Connecticut Ave NW, Ste. 200

Lakewood, Colorado 80226     Washington, DC 20036

to perform the legal services mentioned in paragraph (1) below. For purposes of this agreement, Andrus Wagstaff, PC and Lawrence Litigation Group, LLP shall be collectively referred to as the "Firm." Andrus Wagstaff, PC and Lawrence Litigation Group, LLP will split the attorney fees between themselves as if you had retained just one law firm. To be clear, retaining two law firms will not result in any additional legal fees owed by you.

## 1. SCOPE OF ENGAGEMENT

The claim, controversy, and other matters with reference to which the services are to be performed are:

Product Liability and personal injury claims for damages arising out of exposure to Monsanto's Round Up. The firm will not pursue medical malpractice claims.

## 2. CONTINGENCY

The contingency upon which compensation is to be paid is any recovery of money for the claim addressed in Scope of Engagement section above.

## 3. CLIENT'S LIABILTY TO PAY COMPENSATION

The Client is not to be liable to pay compensation otherwise than from amounts collected for the Client by the Firm, except as follows:

In the event the Client terminates this contingent fee agreement without wrongful conduct by the Firm which would cause the Firm to forfeit any fee, or if the Firm justifiably withdraws from the representation of the Client, or if the parties mutually agree to terminate this agreement, the Firm may ask the court or other tribunal to order the Client to pay the Firm a fee based upon the reasonable value of the services provided by the Firm. If the Firm and the Client cannot agree how the Firm is to be compensated in this circumstance, the Firm will request the court or other tribunal to determine: (1) if the Client has been unfairly or unjustly

enriched if the Client does not pay a fee to the Firm; (2) the amount of the fee owed, taking into account the nature and complexity of the Client's case, the time and skill devoted to the Client's case by the Firm, and the benefit obtained by the Client as a result of the Firm's efforts; and (3) prejudice to the Firm if no such fee is paid. Any such fee shall be payable only out of the gross recovery obtained by or on behalf of the Client and the amount of such fee shall not be greater than the fee that would have been earned by the Firm if the contingency described in this contingent fee agreement had occurred.

4.     PERCENTAGE OF GROSS AMOUNT COLLECTED

The Client will pay the Firm 40% percent of the gross amount collected. "Gross amount collected" means the amount collected before any subtraction of expenses and disbursements. "The amount collected" includes specially awarded attorneys' fees and costs awarded to the Client, if any. Lawrence Litigation Group, LLP and Andrus Wagstaff PC will split the attorney fees.  Retaining two law firms will NOT result in additional attorney fees owed by you.

5.     FEES AND COSTS AWARDED TO OPPOSING PARTY

Costs and attorneys' fees, if any, awarded to an opposing party against the Client before completion of the case will be paid by the Client when ordered. Any award of costs or attorneys' fees, regardless of when awarded, will not be subtracted from the amount collected before computing the amount of the contingent fee under this agreement.

6.     EXPENSES

The Client is to be liable to the Firm for reasonable expenses and costs incurred in litigating client's claim. The Client will reimburse the Firm for such expenditures from his/her share of the recovery upon final resolution.

Expenses shall include, but not be limited to, cash and noncash expenditures for filing fees; subpoenas; depositions; witness fees; in-house and outside investigation services; expert witness fees; medical records and reports; LexisNexis/Westlaw and other computer research and on-line service costs; photographs; in-house and outside photocopies; facsimiles; long-distance telephone calls; postage and federal express, UPS and other overnight service charges; mediation fees; travel costs; United airline tickets; out-of-town hotel at a SPG, Hyatt or Hilton hotel; food and transportation charges; in-house and outside trial exhibits; in-house and outside multi-media services; outside legal fees and costs for estate, guardianship, bankruptcy and probate matters; outside resolution costs for allocation and oversight, and all other costs necessary for performance of legal services. Costs shall also include, if applicable, any assessment imposed by any Multi-District Litigation Court or State Court Consolidation or withheld from any settlement or favorable judgment by any defendant.

In addition to the above listed individual expenses, the Firm also charges common benefit costs to clients who are part of a class action or who also have individual claims that are part of a mass tort action. Common benefit costs are costs expended by the Firm for the common benefit of a group of clients.  For example, if a deposition of a defendant expert

witness is taken in one case, and this deposition can be used for and/or benefit the claims of many other clients, the Firm classifies these costs as common benefit costs. By using this common benefit cost system, no one client has to solely bear the costs which actually benefit the group as a whole, and many of the most substantial costs of litigation can be shared equally by all. Thus, to the extent such charges benefit a group of clients, common benefit charges may include postage, faxes, telephone, copies, experts, investigation, computer research, medical research, transportation, litigation group expenses (i.e. AAJ litigation group), and some of the costs incurred in actually trying any one client's case before a jury.

All expenses advanced on the Client's behalf, whether individually and/or common benefit, shall bear interest at the rate of one percent (1%) per month (12% per year) until such time as the costs are paid by Client.

7.    THIRD PARTY EXPENSES

The Client authorizes the Firm to pay from the amount collected the following: all physicians, hospitals, subrogation claims and liens. Where the applicable law specifically requires the Firm to pay the claims of third parties out of any amount collected for the Client or to deduct same to be held in escrow, the Firm shall have the authority to do so notwithstanding any lack of authorization by the Client, but if the amount or validity of the third party claim is disputed by the Client, the Firm shall deposit the funds into the registry of an appropriate court for determination. Any amounts paid or payable to third parties will not be subtracted from the amount collected before computing the amount of the contingent fee under this agreement.

8.    MEDICAL MALPRACTICE ISSUES

The Client understands and agrees that the Firm has not been retained to investigate or pursue, and will not investigate or pursue, any medical malpractice action or any other action against our doctors. The Client understands that a medical malpractice may exist. The Client also understands that the manufacturers may attempt to point the blame at the doctors if the case goes to trial. The doctors may be able to be placed on the verdict form, and if the manufacturers are successful in convincing the jury the doctors were partially at fault, then our recovery may be reduced by the portion of the fault the jury places on the doctors. The Client understands that there are statutes of limitations that apply to the filing of medical malpractice claims, and that if a lawsuit is not filed against the doctors before the statute of limitations runs, then we will be forever prevented from suing the doctors. The Client understands that the statute of limitations may have already run, and that every day we wait to file a lawsuit may be the last day a lawsuit can be filed.  The Client understands that the Firm will not be bringing any claims for medical malpractice or suing any of our doctors, and that if the Client wishes to sue the doctors then he or she will have to retain other counsel.

9.    TIMELINESS OF CLAIM

The Client acknowledges that the Firm must have certain information to determine whether or not Client has a claim and that the Firm cannot file a lawsuit without that information.  The Client also acknowledges that every claim has a Statute of Limitations and if a

DocuSign Envelope ID: 9F7780EB-6271-420E-AC59-DA50916E10F3

lawsuit is not filed prior to the expiration of the applicable Statute of Limitations, the right to file a lawsuit may be gone forever.  Client specifically acknowledges that, prior to filing a lawsuit, the Firm must have the following information: (1) information establishing who manufactured the product at issue in your case ("Product ID"); and (2) medical records establishing Client's alleged injury ("Proof of Injury").  Although Product ID can sometimes be obtained in short order, the Client acknowledges that it can sometimes take up to 6 months, or longer, to obtain Product ID even when diligence is exercised. And, sometimes, we can never obtain Product ID. The client agrees to help assist in obtaining Product ID and Proof of Injury.  The Client understands that the Firm may choose to terminate this relationship if Product ID or Proof of Injury cannot be obtained.  **Client understands it will take the Firm a minimum of sixty (60) days after receipt of such information to evaluate the potential claim, and that should the statute of limitations or any other applicable deadlines expire during that sixty (60) day period, Client agrees not to hold the Firm (or its associated counsel) responsible for any consequences related to the expiration of that deadline.**

10.    DUAL REPRESENTATION

By execution of this Agreement, Client represents and warrants that they have not already retained other counsel to represent them in this matter.  If it is later determined that Client had retained counsel to represent them in this matter prior to execution of this Agreement, Client agrees that the Firm shall still be entitled to its full fee percentage and recovery of its fees, and agrees to pay the Firm from their recovery in this matter or out of pocket if necessary. Client agrees to inform the Firm in writing if they retain subsequent counsel to assist and/or represent them in this matter and to provide contact information (firm name, lead attorney, phone number) of new counsel to the Firm. If Client does not so inform the Firm within 30 days of retaining subsequent counsel, Client agrees that the Firm shall still be entitled to its full fee percentage and recovery of its fees, and agrees to pay the Firm from their recovery or out of pocket.

**11.    ASSOCIATED COUNSEL**

The Client acknowledges that it may be necessary for the Firm to associate with other legal counsel and agree that the Firm's fees set forth above will include fees due associate counsel, which fees shall be divided based upon the work performed and/or obligations incurred by each participating firm. *The Client will pay no more in fees with the inclusion of associate counsel than he or she would pay pursuant to this contract if the Firm solely represented him or her.* The Client agrees that the Firm and associate counsel each will be responsible to represent the Client's interests. However, the Client agrees that the Firm, its attorneys and/or its employees will not be financially responsible for any wantonness, willfulness and/or intentional misconduct of associate counsel, associate counsel attorneys and/or associate counsel employees, and in no event will the Firm, its attorneys and/or employees be financially responsible for any punitive conduct and/or punitive damages arising

out of the conduct of associate counsel, associate counsel attorneys and/or associate counsel employees, and/or anyone acting on the behalf of associate counsel.

12.    SETTLEMENT PROCEDURE IN MULTIPLE CLIENT CASES

The Client understands that oftentimes in cases in which the Firm represents multiple clients in similar litigation, the opposing parties (the defendants) attempt to settle the Firm's cases in groups under a matrix type system whereby the Firm's clients are offered varying settlement amounts depending upon the circumstances of each of the client's cases. Once a settlement value under the matrix is determined, the client is then given the opportunity to accept or reject the value being offered within the matrix system. Similarly, defendants may wish to settle the Firm's cases as a group, meaning the defendants may attempt to settle the Client's case along with a number of other similar cases the firm is handling. When this group settlement system is being offered by the defendant, the Firm will get each client's authorization for a minimum gross amount for which the clients authorize the Firm to attempt to settle the Client's case. The Firm then adds up the total of all clients' minimum authorized settlement values and attempts to settle the group for at least the minimum authorized by the clients.  Finally, under some circumstances, the defendants offer to pay a certain sum to all the Firm's clients regardless of the circumstances of the individual cases. Thus, each client receives the same amount of money even though the clients may have different levels of injuries or liability.

Regardless of what method is used, the fact that the client's case settles with a group of others will not take away the Client's right to approve or not approve his/her individual settlement. Each client will always have the right to approve or not to approve his/her individual settlement. *Because the Client will be given the opportunity to individually evaluate and approve any settlement wholly independent from any other Firm client that may settle in a group with him or her, the Client agrees not to share any information (including, but not limited to, the nature of the Client's injury and the settlement amount) with any other Firm client who may settle in a group with him or her.*

13.    RECOVERY

The Client expressly grants power to the Firm to endorse and deposit into the Firm's Client Trust Account any checks in the Client's name resulting from a settlement either approved by the Client or issued pursuant to a court order, and authorizes the attorneys to deduct fees, costs, disbursements and expenses, and to pay all hospital and medical bills from the Client's share of the recovery.

14.    RETENTION OF CLIENT FILE

The Client understands that the client file maintained by the Firm is his or her property. However, the client also understands that the Firm will only retain the Client's file for a period of seven years after the case is completed.  After the seven-year period, the entire file will be discarded, and the Firm will not retain a copy of any portion of the file.  Thus, it is the Client's responsibility to seek the return of all original documents immediately after the case is completed, and to request a copy of any portions of the file the Client wishes to retain.  If the

Client waits more than seven years to request the file, then no portion of the file will be in existence at that time.

15.    LEGAL CONSTRUCTION

In case any provision, or any portion of any provision, contained in this Agreement shall for any reason be held to be invalid, illegal and/or unenforceable in any respect, such invalidity, illegality and/or unenforceability shall not affect the validity and/or enforceability of any other provision or portion thereof, and this Agreement shall be construed as if such invalid, illegal and/or unenforceable provision or portion thereof was never contained herein. The parties to this agreement do hereby subject themselves to the personal jurisdiction of the District Court of the State of Colorado and to the substantive and procedural laws thereof for the resolution of any disputes arising under this agreement and/or for the enforcement of any rights, duties, or obligations arising under this agreement.

16.    CHANGE OF ADDRESS

The Client agrees to keep the Firm informed at all times of their current address and telephone number.

WE HAVE EACH READ THE ABOVE AGREEMENT BEFORE SIGNING IT.

BY: _Anthony LaRosa_____        7/3/2017_____
                Client                                        Date

BY: _____        _____
                Attorney                                    Date

# EXHIBIT B

# SETCOORD

SETTLEMENT COORDINATION SERVICES, LLC

515 S. FRY RD., STE. 244
KATY, TEXAS 77450
OFC: (281) 201-1444
FAX: (346) 279-0206

EMMIE L. SCHULTE, ESQ., OWNER & FOUNDER
ESCHULTE@SETCOORD.COM

March 20, 2020

***Via email to:ustpregion21.TP.ecf@usdoj.gov***

Guy A. Van Baalen
Asst US Trustee
501 East Polk St, Ste 1200
Tampa FL 33602

RE:    CONFIDENTIAL COMMUNICATION – ROUNDUP PRODUCT'S LIABILITY
        LITIGATION - AW
        Debtor: Anthony LaRosa
        Bankruptcy Case No.: 8:10-bk-10012
        Date of Diagnosis: 4/1/2010

Dear Trustee,

The purpose of this letter is to notify you that Andrus Wagstaff, PC Attorneys represent Anthony LaRosa ("Debtor") in the product's liability claim against Monsanto Company due to injuries suffered from the use of their product, Roundup. At this time, there is no known value of this claim, however, settlement negotiations with Monsanto are pending.

Additionally, Andrus Wagstaff, PC Attorneys hired Settlement Coordination Services, LLC ("SetCoord") to consult with the bankruptcy trustee and act as a liaison to Andrus Wagstaff, PC to resolve any issues arising from the Debtor's claim and potential settlement offer in regards to Anthony LaRosa's Bankruptcy Cause No. 8:10-bk-10012.

SetCoord and Andrus Wagstaff, PC are attempting to verify whether the bankruptcy estate has an interest in or right to this potential claim, settlement offer, and/or award in the event the claimant receives an offer for monetary compensation for injuries suffered, and if so, we are kindly requesting your advisement as to whether you will claim the offer and/or award for the bankruptcy estate or abandon any interest in favor of Debtor by checking the appropriate box following this correspondence.

Should the potential claim, settlement offer, and/or award be deemed property of the bankruptcy estate, please advise as to the process required for retaining Andrus Wagstaff and any co-counsel as special counsel to represent the trustee in this matter.

Please remit return correspondence to Emmie L. Schulte, Esq. of SetCoord via any of the following methods:

Mail:   515 S. Fry Rd., Suite 244

Katy, TX 77450;

Fax:   (364) 279-0206; or

E-Mail: eschulte@setcoord.com

Should you have any questions or concerns, please do not hesitate to contact SetCoord at (281) 201-1444 or via E-mail at eschulte@setcoord.com.

Sincerely,

Emmie L. Schulte, Esq.
Settlement Coordination Services, LLC


cc:   Larry S Hyman, Ch 7 Trustee          Lhyman@epitrustee.com
                                           larry@larryhymancpa.com

      Ana V. DeVilliers, Debtor's Atty      ana@pricelawfirm.com

RE:   CONFIDENTIAL COMMUNICATION – ROUNDUP PRODUCT'S LIABILITY
      LITIGATION - AW

      Debtor: Anthony LaRosa
      Bankruptcy Case No.: 8:10-bk-10012
      Date of Diagnosis: 4/1/2010

PLEASE CHECK THE APPLICABLE BOX & SIGN BELOW:

❏   Neither the Trustee of the Bankruptcy Estate of Anthony LaRosa, nor Anthony LaRosa's
    bankruptcy estate, has any interest in or rights to the aforementioned potential claim, settlement
    offer, and/or award resulting from the Debtor's injuries resulting from the use of Roundup. I, as
    Trustee of the Bankruptcy Estate of Anthony LaRosa or representative of the United States
    Trustee's Office, do not assert any claim or right to the potential claim, offer, or award
    resulting from acceptance of the offer, nor do I intend to claim the personal injury potential
    claim, offer or award resulting from acceptance of the offer as an asset of the bankruptcy estate.

❏   The aforementioned potential claim, settlement offer, and/or award resulting from acceptance
    of the offer, for Anthony LaRosa's injuries resulting from the use of Roundup is an asset of the
    Bankruptcy Estate of Anthony LaRosa.  I, as Trustee of the Bankruptcy Estate of Anthony
    LaRosa or Bankruptcy Administrator, do not assert any claim or right to the potential claim,
    offer, or award resulting from acceptance of the offer, nor do I intend to claim personal injury
    potential claim, the offer, or award resulting from acceptance of the offer as an asset of the
    bankruptcy estate.

❏   The aforementioned potential claim, settlement offer, and/or award resulting from acceptance
    of the offer, for Anthony LaRosa's injuries resulting from the use of Roundup is an asset of the
    Bankruptcy Estate of Anthony LaRosa. I, as Trustee, or Bankruptcy Administrator, am
    asserting a claim to the potential personal injury claim, offer, and/or award resulting from
    acceptance of the offer, and the settlement offer and potential award are assets of the
    Bankruptcy Estate of Anthony LaRosa.


_____        _____
Signature                                       Date


_____
Printed Name


_____        _____
Title/Authority                                 E-Mail & Phone No.

# **EXHIBIT C**

| | |
|---|---|
| **From:** | Larry Hyman |
| **To:** | "Emmie Schulte" |
| **Cc:** | "ana@pricelawfirm.com"; "Jack Garland" |
| **Subject:** | 2010-bk-10012 Anthony LaRosa |
| **Attachments:** | image002.png |

Please be advised that this case has been reopened and I have been reappointed chapter 7 trustee in this matter.  I wish to pursue the Monsanto/Roundup claim.  Please advise as to the law firms to be employed.

**Larry S. Hyman**
Larry S. Hyman, C.P.A.
307 S. Boulevard | Suite B | Tampa, FL 33606
PO Box 18614 | Tampa, FL 33679
813.875.2701 | 813.875.2797 (Fax)
**Please note our new address**



IRS Circular 230 Required Notice--IRS regulations require that we inform you as follows: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended to be used and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter[s].

Information contained in this transmission is privileged and confidential. It is intended for the use of the individual(s) or entity named above. If the reader of this message is not an intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify me by tel.

**From:** Jack Garland [mailto:jgarland@setcoord.com]
**Sent:** Friday, March 20, 2020 12:30 PM
**To:** USTPRegion21.TP.ECF@usdoj.gov; Van Baalen, Guy (USTP) <Guy.A.VanBaalen@usdoj.gov>
**Cc:** LHyman@epitrustee.com; Larry Hyman <Larry@larryhymancpa.com>; ana@pricelawfirm.com; Emmie Schulte <eschulte@setcoord.com>
**Subject:** 2010bk10012 Anthony LaRosa
**Importance:** High

Dear Trustee,

Please find attached confidential correspondence regarding the above--referenced debtor, Anthony LaRosa, and pertaining to the potential Monsanto Roundup settlement and prior bankruptcy Matter.

Your prompt attention to this correspondence is greatly appreciated.  If you reply, please reply

all to this email.  Thank you.

Sincerely,


Jack J. Garland, Jr., Esq.



515 S. Fry Rd., Suite 244
Katy, TX 77450
(281) 201-1444 (O)
(346) 279-0206 (F)
jgarland@setcoord.com
www.setcoord.com


CONFIDENTIALITY NOTICE: This e-mail and any attached files from SetCoord may contain information that is privileged, confidential, and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it.

# **EXHIBIT D COMPOSITE**

| | |
|---|---|
| **From:** | Breanna Alexander |
| **To:** | Larry Hyman |
| **Subject:** | 2010-bk-10012 Anthony LaRosa |
| **Date:** | Thursday, April 11, 2024 4:03:50 PM |
| **Attachments:** | LaRosa.Anthony PG6 Disb Stmt.pdf |
| | LaRosa.Anthony HB5 Disb Stmt.pdf |

Hello Mr. Hyman

To follow up from our conversation last week, I have had a chance to review our files and old email accounts.

Per your request, I have attached copies of the disbursement statements that reflect the payments we issued directly to Mr. LaRosa.

Please let me know if you have any availability for a call next week to discuss next steps.

Breanna E Alexander, Esq. | *Wagstaff Law Firm* | *Andrus Wagstaff, PC*
**Attorney at Law**
***Licensed and Practicing in Colorado****
**940 Lincoln Street, Denver, Colorado 80203**
**Direct - (720)279-0589** | balexander@wagstafflawfirm.com

## www.WagstaffLawFirm.com

This e-mail transmission contains information from the Wagstaff Law Firm and Andrus Wagstaff, PC and which may be confidential or protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.



**ANDRUS | WAGSTAFF**

─ ATTORNEYS AT LAW ─

940 Lincoln Street Denver, CO 80203

7/1/2022

Anthony                                                         Payment Via:
LaRosa                                                               Check

**LIEN HOLDBACK RELEASE STATEMENT**

This disbursement statement refers to the reduction of the lien holdback detailed on your initial statement in your claim for injuries against Monsanto. Please see the attached cover letter for a detailed explanation of your disbursement statement.

| | |
|---|---:|
| *INITIAL CLIENT DISBURSEMENT (Previously paid)* | $23,600.99 |

| | |
|---|---:|
| ORIGINAL Lien Resolution Reserve Amount | $27,785.78 |
| - FINAL Lien Resolution Obligation | - $27,785.78 |
| *= DIFFERENCE DUE TO CLIENT* | *= $0.00* |

| | |
|---|---:|
| ORIGINAL Lien Resolution Fee | $1,175.00 |
| - FINAL Lien Resolution Fee | - $675.00 |
| *= DIFFERENCE DUE TO CLIENT* | = $500.00 |

| | |
|---|---:|
| Additional Items Not Previously Invoiced | - |

| | |
|---|---:|
| ***TOTAL AMOUNT DUE TO CLIENT =*** | **$500.00** |



**ANDRUS | WAGSTAFF**
— ATTORNEYS AT LAW —
940 Lincoln Street  Denver, CO 80203

1/14/2022

Anthony                                                    Payment Via:
LaRosa                                                          Check

### CLIENT DISBURSEMENT STATEMENT

This disbursement statement refers to your Roundup claim against Monsanto. Please see attached cover letter for a detailed explanation of your disbursement statement.

| GROSS SETTLEMENT AMOUNT (GSA) | | $92,619.26 |
|---|---|---|

*Allocation of Client Funds*

| Client Share of GSA | *60%* | $55,571.55 |
|---|---|---|
| Lien Resolution Reserve Amount | | - $27,785.78 |
| Lien Resolution and Admin Fees | | - $2,152.82 |
| Individual Client Reimbursable Expenses | | - $964.50 |
| Pro Rata Share of General Reimbursable Expenses | | - $467.47 |
| Special Master Fee | | - $600.00 |
| EIF/Appeal Fee *(if applicable)* | | - $0.00 |
| Payment to Pre-Settlement Loan or Bankruptcy Trustee *(if applicable)* | | - |

| = INITIAL CLIENT DISBURSEMENT | | **$23,600.99** |
|---|---|---|

*Allocation of Attorney Fees*

| Contingency Legal Fee | *40%* | $37,047.70 |
|---|---|---|
| Less MDL Fee *(if applicable)* | - | $0.00 |
| = NET LEGAL FEE | | $37,047.70 |

# **EXHIBIT E**



## JOHNSON
## POPE
BOKOR
RUPPEL &
BURNS, LLP

ROBERT V. POTTER

311 PARK PLACE BLVD., #300
CLEARWATER, FLORIDA 33759
Email: bobp@jpfirm.com
TELEPHONE: (727) 461-1818
FACSIMILE: (727) 461-8617

COUNSELORS AT LAW    TAMPA ▪ CLEARWATER ▪ ST. PETERSBURG

August 6, 2024

**VIA FIST CLASS MAIL AND FACSIMILE (346) 279-0206)**
Settlement Coordination Services, LLC
515 S. Fry Road, Suite 244
Katy, Texas 77450

**VIA FIRST CLASS MAIL AND FACSIMILE (888-875-2889)**
Andrus Wagstaff, PC
7171 West Alaska Drive
Lakewood, CO 80226

                    Anthony LaRosa Bankruptcy
                    Case No. 8:10-bk-10012

Dear Sir/Madam:

    We represent Larry Hyman, the Bankruptcy Trustee appointed to the personal Bankruptcy action commenced by Anthony LaRosa on April 28, 2010, Case No. 8:10-bk-10012. You represent Anthony LaRosa in a product liability claim against Monsanto Company regarding injuries suffered from exposure to Roundup. Your representation of Mr. LaRosa commenced on or about July 3, 2017. Mr. LaRosa's injuries were diagnosed pre-petition, on April 1, 2010, and therefore are property of the Bankruptcy Estate.

    This was apparent to you because you directed Settlement Coordination Services, LLC to write to the U.S. Trustee's Office on March 20, 2020. That letter, in part, stated:

    The purpose of this letter is to notify you that Andrus Wagstaff, PC Attorneys represent Anthony LaRosa ("Debtor") in the product liability claim against Monsanto Company due to injuries suffered from the use of their product, Roundup. At this time, there is no known value of this claim, however, settlement negotiations with Monsanto are pending.

    Additionally, Andrus Wagstaff, PC Attorneys hired Settlement Coordination Services, LLC ("SetCoord") to consult with the Bankruptcy Trustee and act as a liaison to Andrus Wagstaff, PC to resolve any issues arising from the Debtor's claim and potential settlement offer in regard to Anthony LaRosa's Bankruptcy Case No. 8:10-bk-10012.

    SetCoord and Andrus Wagstaff, PC are attempting to verify whether the Bankruptcy Estate has an interest in or right to this potential claim, settlement



Settlement Coordination Services, LLC
Andrus Wagstaff, PC
August 6, 2024
Page 2

============

offer, and/or award in the event the claimant receives an offer for monetary compensation for injuries suffered, and if so, we are kindly requesting your advisement as to whether you will claim the offer and/or award for the Bankruptcy E state or abandon any interest in favor of Debtor by checking the appropriate box following this correspondence.

On April 7, 2020 Larry Hyman, as Trustee, informed you the Bankruptcy Estate was asserting an interest in any recovery by stating:

Please be advised that this case has been reopened and I have been reappointed Chapter 7 Trustee in this matter.  I wish to pursue the Monsanto/Roundup claim.  Please advise as to the law firms to be employed.

Over a period of the next seven (7) months, Jack Garland and Emmie L. Schulte corresponded with Mr. Hyman, albeit sporadically and with considerable delays.

On October 22, 2020, Jack Garland responded that the attorneys to be hired by the Bankruptcy Estate were Sarah Wolter, Andrus Wagstaff, PC and Gary Podell of Lawrence Litigation Group LP.

Larry Hyman, as Trustee, replied on October 22, 2020:

Any attorney/law firm seeking compensation in this matter must prepare, sign, employ counsel must also be filed.  Please customize the attached documents.

On April 1, 2021, Jack Garland finally sent draft declarations and a draft application to employ both Sarah Wolter and Gary Podell. They were never signed or filed with the Bankruptcy Court.

Nevertheless, it was apparent to all parties that Larry Hyman, as Trustee was asserting the Bankruptcy Estate's claim to any LaRosa recovery and was seeking to retain attorneys Sarah Wolter and Gary Podell to pursue the LaRosa claim on behalf of the Bankruptcy Estate. However, on April 4, 2024, Larry Hyman was notified Andrus Wagstaff, PC had not only dispersed the net proceeds directly to Anthony LaRosa on January 1, 2022  and July 1, 2022 but had also dispersed, without Bankruptcy Court approval, the attorney fees to the firms of Andrus Wagstaff, PC and Lawrence Litigation Group LP.

Accordingly, the Bankruptcy Estate seeks recovery of all sums dispersed to Anthony LaRosa ($24,100.99) and the law firms of Andrus Wagstaff, PC and Lawrence Litigation Group LP ($37,047.70).



Settlement Coordination Services, LLC
Andrus Wagstaff, PC
August 6, 2024
Page 3

============

Larry Hyman, as Trustee, has retained this firm to recover the above amounts and determine whether the entire settlement amount is property of the Bankruptcy Estate. To make that determination we need the following information:

1. What were the dates of Anthony LaRosa's exposure to the Monsanto product known as Roundup;

2. What was the date of Anthony LaRosa's first known symptoms of illness related to his exposure to Roundup;

3. What date did Anthony LaRosa first seek medical treatment for his symptoms related to Roundup exposure;

4. What was the date Anthony LaRosa was first told by any medical practitioner that he was possibly experiencing negative health effects due to exposure to roundup.

Very truly yours,

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP


*/s/ Robert V. Potter*
Robert V. Potter


RVP:msd